PER CURIAM.
|!Writ denied. We find relator has not carried his post-conviction burden of proof and thus, the District Court did not err when it dismissed his claims for the reasons it assigned in denying relief. La.C.Cr.P. art. 930.2. It is well-established that the District Court may dispose of an application for post-conviction relief without conducting an evidentiary hearing, even if the application states a claim on which relief could be granted, if the issues raised can be resolved on the application, answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or that are available to the court. La.C.Cr.P. art. 928; La.C.Cr.P. art. 929(A); see State ex rel. Tassin v. Whitley, 602 So.2d 721, 722-23 (La.1992) (only “[w]hen there is a factual issue of significance that is sharply contested” need the court hold a hearing); see also art. 929 cmt.; Cheney C. Joseph, Jr., Developments in the Law: Postconviction Relief, 41 La.L.Rev. 632, 635-37 (1981) (reporter of Court committee which drafted statute reviews judge’s role in summary rulings).
After a lengthy trial in 2004, an East Baton Rouge Parish jury unanimously found relator guilty as charged of the first degree murder of Charlotte Murray Pace | aand, after the sentencing hearing, unanimously voted to impose a sentence of death. In addition to evidence of Pace’s murder, the State presented evidence of relator’s guilt in four unx-elated homicides and one attempted homicide in which the surviving victim had positively identified relator. This Court affirmed his conviction and sentence on appeal, State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, and the United States Supreme Court denied certiorari. Lee v. Louisiana, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).
In 2009, relator filed a pro se “shell” application for post-conviction relief and requested counsel. Thereafter, counsel enrolled and filed three supplements, raising 42 claims. On August 19, 2014, the District Court summarily denied relief, assigning written reasons. We find no error in the District Court’s thorough ruling and thus, no basis for remanding for an eviden-tiary hearing and no grounds for vacating his conviction or sentence. Most of relator’s claims fail because they were addressed in his appeal and thus are repetitive.
First, relator has not shown he was denied a fair trial as a result of inadequate funding. He claims the District Court underestimated the cost of independently testing the DNA and forensic evidence and he was thereby unable to afford the kind of detailed inquiry that was necessary to expose the allegedly unorthodox practices of the Louisiana State Police Crime Lab (LSPCL). The record shows that, before trial, the District Court allocated the full balance of the budget for the East Baton Rouge Public Defender’s Office, $37,000, for relator’s defense and approved funding for a pathologist, a serial killer expert, a social worker, a tool mark expert, a psychologist, and DNA experts. Lee, 05-2098, pp. 40-41, 976 So.2d at 137-38. The adequacy of these allocations was addressed on appeal and this Court found relator failed to justify his claimed need for additional funds. Id, pp. 40-43, 976 So.2d at 137-38 (citing State v. Touchet, 93-2839 (La. 9/6/94), 642 So.2d 1213). In particular, this Court noted relator had been afforded funds for DNA experts and that lead counsel’s caseload had consisted of only one other client. Lee, 05-2098, pp. *635 42-43, 976 So.2d at 138 (citing State v. Peart, 621 So.2d 780 (La.1993) (excessive caseload may result in failure to provide effective assistance)).
In re-urging his funding complaints post-conviction, relator has alleged there existed significant doubt as to the presence of sperm on Pace’s body and that only unreliable evidence linked him to the other victims. Other than mere technical allegations, relator does not assert or provide any evidence suggesting he should have been excluded as the source of the DNA recovered from Pace or the other victims. Nothing relator has offered post-conviction establishes that any amount of additional funding would have given rise to discovery of evidence excluding him as the DNA contributor dr casting reasonable doubt on the State’s case. Thus, relator has failed to show prejudice as a result of the allegedly insufficient funding and failed to show his similar complaints were incorrectly disposed of in the proceedings leading to trial or on appeal. We find the District Court correctly dismissed these claims.
We find relator has also not shown the State’s evidence was insufficient to support his conviction and sentence. In his view, the evidence collected from Pace’s body was unreliable and the State failed to prove she was raped because his post-conviction expert found no detectable spermatozoa on her vaginal or cervical swabs. As an initial matter, although more often raised on appeal, timely freestanding claims challenging the sufficiency of the evidence are cognizable on collateral review. State ex rel. Montgomery v. State, 12-2116 (La.3/15/13), 109 So.3d 371. “In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the |4United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime ■ had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
Here, the jury found relator acted with specific intent to kill Pace while engaged in the perpetration or attempted perpetration of an aggravated rape. R.S. 14:30(A)(1). To show he committed or attempted to commit aggravated rape, the State was required to prove beyond a reasonable doubt relator had or attempted to have “anal, oral, or vaginal sexual intercourse” with Pace while she resisted to the utmost, but was overcome; that Pace was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; or that Pace was prevented from resisting because relator was armed with a dangerous weapon. R.S. 14:42.
We find the State presented ample evidence to make the required showings. Jurors heard from forensic analyst Julia Naylor, who, with the assistance of crime scene investigators, took swabs frqm Pace’s breasts and nipples, voided areas near her rib cage, left buttock just below her vagina, and left thigh. Lee, 05-2098, p. 3, 976 So.2d at 116. These samples were important because an Alternate Light Source test conducted at the scene revealed biological stains on those portions of her body. Id. According to Naylor’s trial testimony, there was seminal fluid on Pace’s left buttock, vagina, and cervix and the “most complete DNA profile” came from the left buttock sample. Lee, 05-2098, pp. 2-5, 976 So.2d at 116-17. The probability of relator being randomly matched with the genetic profile recovered from Pace’s body was one in 3.6 quadrillion. Id.
*636 , |flThe jury .apparently credited this evidence, which indicated the presence of semen on or near Pace’s genitals, and the presence of relator’s DNA, coupled with the defensive wounds that Pace sustained, and determined relator had raped or attempted to rape her during the ■ brutal attack in which he violently killed her. Lee, 05-2098, pp. 2-5, 976 So.2d at 116-17 (“[Tjhere were a number of defensive wounds on Pace’s arms, forearms’, hands and wrists”). The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the. testimony of any witness. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). Relator has not shown the jury’s determinations were unreasonable and has not shown the State failed to carry its burden of proof. In urging there existed no proof of sexual intercourse, he emphasizes limited portions of his post-conviction expert’s report which opined that some of the LSPCL’s tests were susceptible to misinterpretation. In relying on those select portions of his expert’s nuanced and technical ad hoc opinions, however, relator ignores that his expert, within the same report, acknowledged the existence of reliable proof that Pace had been raped: ’her vaginal, cervical, and buttock swabs tested positive for P30 fluid, which the report characterized as presumptive evidence of semen. We find this claim meritless and the District Court correctly dismissed it.
Relator has also failed to show counsel - rendered ineffective assistance during the guilt phase of trial. Under the standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in State v. Washington, 491 So.2d 1337, 1339 (La.1986), a reviewing court .must reverse a conviction if the defendant establishes (1) counsel’s performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel’s inadequate ^performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.
Not only, has relator failed to show counsel overlooked any evidence capable of casting reasonable doubt on the State’s case, see generally Jones v. Jones, 988 F.Supp. 1000, 1002-03 (E.D.La.1997) (before reviewing court will reverse for counsel’s failure to investigate, inmate must show attorney has “fail[ed] to investigate a plausible line of defense or interview^ available witnesses.”), he has also failed to show that even if counsel could have somehow more vigorously contested the State’s case it would have affected the verdict in a case in which he was matched with DNA recovered from Pace’s body and his own post-conviction expert has acknowledged the evidence of sperm on her genitals.
Relator also fails to show counsel unreasonably elected not to seek to suppress the DNA evidence. In relator’s view, The State’s DNA evidence was unreliable because much of it was “mixture evidence” based on small sample quantities and because the State’s technicians allegedly failed to apply generally-accepted methods when undertaking some aspects of their analyses. He argues further he has been prevented from independently reviewing the DNA evidence because the State has refused to disclose its raw electronic data.
In evaluating ineffective assistance of counsel claims based on a failure to pursue. a motion to suppress, courts normally require a petitioner to show the overlooked motion to suppress would have been meritorious and that there is a reasonable probability the jury would have reached a different verdict absent the introduction of the unlawful evidence. Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir.2003) (citing Kimmelman v. *637 Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Thus, if a reasonably competent attorney could have suppressed the evidence and as a result, the State would have dismissed the |7charges, the petitioner may show a basis for relief. See Northrop v. Trippett, 265 F.3d 372, 383-84 (6th Cir.2001) (en banc) (conviction vacated based on ineffective assistance: “[during his representation, [counsel] knew that police had arguably seized Northrop based upon no more than an anonymous tip without any supporting verifiable detail.... Without the inadmissible cocaine evidence, Michigan would obviously have failed to meet its burden of proving Northrop possessed the cocaine.”); State v. Reichenbach, 153 Wash.2d 126, 101 P.3d 80, 87 (Wash.2004) (because contraband was illegally seized there existed no tactical basis for failing to move to suppress it; counsel’s performance clearly prejudicial).
Under the standard set in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which this Court adopted in State v. Foret, 628 So.2d 1116, 1121 (La.1993) (La.C.E. art. 702 “virtually identical to its source provision in the Federal Rules of Evidence ... [Rule] 702”), the District Court is required to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, 509 U.S. at 589, 113 S.Ct. at 2795. Acting as gatekeeper, the District Court has considerable leeway to determine whether expert testimony is reliable. Kumho Tire Company, Ltd., v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). In the end, “the trial judge must determine whether the testimony has ⅛ reliable basis in. the knowledge and experience of [the relevant] discipline.’ ” Id. at 149, 119 S.Ct. at 1174 (quoting Daubert, 509 U.S. at 592, 113 S.Ct. at 2796). “Whether Daubert’s specific factors are, or are not, reasonable measures of reliability ... is a matter that ... the trial judge [has] broad latitude to determine,” and, therefore a decision to admit or exclude is reviewed under an abuse of discretion standard. Id., 526 U.S. at 153, 119 S.Ct. at 1176; State v. Edwards, 97-1797, pp. 24-25 (La.7/2/99), 750 So.2d 893, 908-09.
lsRelator has argued the DNA evidence would have been found unreliable, and therefore inadmissible, if counsel had filed a motion to suppress. Although he and his post-conviction expert take issue with various methodologies employed by the State’s forensic analysts and claim that a full independent review remains impossible absent the raw electronic data, relator has not shown or even asserted that the State’s DNA results were incorrect. He offers nothing to show his DNA profile should have in fact been excluded as a source of the DNA samples recovered from Pace or any of the other victims’ bodies but rather seeks merely to cast doubt on isolated processes within the series of complex steps carried out by the analysts. Moreover, he ignores the reality the DNA expert he hired in preparation for trial, also apparently failed to find any meritorious basis upon which to contest the State’s evidence. Lee, 05-2098, pp. 40-41, 976 So.2d at 137—38. Accordingly, he has not shown the District Court would have granted a motion to suppress.
In addition, the District Court did not unreasonably fail to order the State to disclose its raw electronic data given -that the State has provided all the DNA test records in paper form. Even more importantly, the State made available samples of all the DNA evidence so relator could conduct independent testing in furtherance of his post-conviction claims. See State v. Franklin, 03-3072 (La.4/23/04), 872 So.2d *638 1051 (per curiam). In urging entitlement to the State’s raw electronic data, relator has not offered any explanation as to why he apparently declined to take advantage of the opportunity to carry out his own testing. The District Court did not erroneously dismiss these claims.
Moreover, relator’s claims contesting the admission of other crimes evidence and the denial of counsel’s motion for change of venue were considered and rejected on appeal. Lee, 05-2098, 976 So.2d 109. A petitioner’s attempt to re-jhtigateg a claim that has been previously disposed of, by couching it as a post-conviction ineffective assistance of counsel claim, is generally unavailing. We find the District Court correctly rejected these claims as repetitive. See La.C.Cr.P. art. 930.4(A).
Finally, relator has failed to show that relief is warranted as a result of counsel’s claimed failures at the penalty phase. A defendant at the penalty phase of a capital trial is entitled to the assistance of a reasonably competent attorney acting as a diligent, conscientious advocate for his life, State v. Fuller, 454 So.2d 119, 124 (La.1984); State v. Berry, 430 So.2d 1005, 1007 (La.1983); State v. Myles, 389 So.2d 12, 28 (La.1980) (on reh’g); see also Burger v. Kemp, 483 U.S. 776, 788-89, 107 S.Ct. 3114, 3122-26, 97 L.Ed.2d 638 (1987), and counsel’s dereliction may warrant relief even if the defendant has been convicted of a particularly egregious crime. See, e.g., Williams v. Taylor, 529 U.S. 362, 368, 120 S.Ct. 1495, 1500, 146 L.Ed.2d 389 (2000) (committed two assaults on elderly women, leaving one in a persistent vegetative state) and Rompilla v. Beard, 545 U.S. 374, 377, 125 S.Ct. 2456, 2460, 162 L.Ed.2d 360 (2005) (stabbed victim repeatedly before setting fire to his body). To show ineffectiveness as a result of counsel’s failure to present mitigating evidence, a petitioner must establish that: (1) counsel failed to undertake “a reasonable investigation [which] would have uncovered mitigating evidence;” and (2) failing to put on the available mitigating evidence “was not a tactical decision but reflects a failure by counsel to advocate for his client’s cause;” (3) which caused “actual prejudice.” State v. Hamilton, 92-2639, p. 6 (La.7/1/97), 699 So.2d 29, 32 (citing State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333 and State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272).
Relator asserts counsel failed to discover evidence of his frontal lobe abnormalities, nightmarish childhood, and diverse frailties. He points to omitted 11 nevidence indicating he has bipolar and other disorders; that his father abandoned him as an infant; that he suffered from and witnessed abuse at the hands of his stepfather; and that his family has a history of mental illness. In relator’s view, had this evidence been presented, at least one juror would have voted for a life sentence.
However, even assuming arguendo counsel unreasonably failed to discover and present the omitted mitigating evidence, relator has not shown it would have created a reasonable likelihood of a different sentencing verdict in a case in which the jury heard substantial evidence of his intellectual disability and adaptive impairments in furtherance of his mental retardation claim. See, e.g., Wesbrook v. Thaler, 585 F.3d 245, 253 (5th Cir.2009) (no reasonable probability that the penalty phase outcome would have been different with the omitted evidence of defendant’s frontal lobe damage because it was largely duplicative of other testimony). Relator has not shown the District Court erroneously dismissed this claim.
This Court’s review has revealed the District Court correctly dismissed each of relator’s claims for post-conviction relief and no relief is further warranted. As an *639 appendix to this per curiam, we attach hereto and make a part hereof the District Court’s well-considered reasons denying relator post-conviction relief.
In conclusion, the record shows that after relator’s conviction and sentence became final on direct review, State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, cert. denied, Lee v. Louisiana, 555 U.S. 824, 129 S.Ct 143, 172 L.Ed.2d 39 (2008), relator initiated state collateral proceedings by filing an application for post-conviction relief in the District Court as required by La.C.Cr.P. art. 925. Several supplemental applications followed along with sweeping discovery requests and several years of extensive litigation. State ex rel. Lee v. Cain, 11-2683 (La.9/21/12), 98 So.3d 323; State ex rel. Lee v. Cain, 11-1933 (La.1/13/12), 77 So.3d 955; State v. Lee, 11-0956 (La.1/13/12), 78 So.3d 129; State v. Lee, 11-0955 (La.1/13/12), 77 So.3d 953; State ex rel. Lee v. Cain, 11-843 (La.1/13/12), 77 So.3d 964. Similar to federal habeas, see 28 U.S.C. § 2244, Louisiana’s post-conviction procedures envision the filing of second or successive petitions only under the narrow circumstances provided for in La.C.Cr.P. art: 930.4. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against granting relief on successive filings mandatory. ' Relator’s claims are now all at the cusp of being fully litigated in state collateral proceedings in accordance with La.C.Cr.P. art. 930.6 and, if rehearing is not sought or granted in accordance with La.S.Ct. Rule 9, the denial of relief will become final. Thereafter, unléss relator can show that one of the narrow exceptions authorizing the fifing of a successive application applies, relator has exhausted his right to state collateral review.
CRICHTON, J., additionally concurs with reasons.