PER CURIAM.
■ | iDenied. In 1999, a' Terrebonne Parish [1] jury found ' relator,' Daniel Joseph Blank, guilty as charged of the first degree murder of 71-year-old Lillian Philippe. At trial, the state presented a detailed recorded statement in which Blank confessed to Ms. Philippe’s .murder' and admitted guilt in five other home-invasion homicides and two attempted homicides. Specifically as to Ms. Philippe, after discussing his entry of her home through a ventilation shaft on the roof, Blank described the confrontation that led to her killing. Blank became a prime suspect in the string of home-invasion murders as a result of his unusual gambling and spending habits and past association with three of the victims. In confessing, he demonstrated knowledge of details in each crime, confessed to stealing large amounts of cash from most victims, and appeared to have had motives in addition-to or other than robbery for some. After finding Blank guilty as charged, jurors, unani *96 mously agreed to impose a sentence of death, in light of the aggravating circumstances that he was engaged in the perpetration or attempted perpetration of an aggravated burglary and Ms. Philippe was age 65 or older. The trial court sentenced him to death by lethal injection in accord with the jury’s determination. This Court affirmed his conviction and sentence, State v. Blank, 04-0204 (La.4/11/07), 955 So.2d 90, reh’g denied (La.6/1/07), and the Supreme Court denied certiorari. Blank v. Louisiana, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
In 2007, Blank filed a pro se “shell” application for post-conviction relief. Thereafter, appointed counsel enrolled and filed four lengthy supplemental applications, to which the state responded with procedural objections and an answer. On July 29, 2013, the district court sustained the state’s objections and thereby dismissed several claims on procedural grounds. Nearly two years later, the court conducted an evidentiary hearing on the remaining claims, on July 20-24, 2015, after which it denied relief with written reasons.
As an initial matter, Blank contests the district court’s procedural rulings, urging that, because he did not raise any ineffective assistance of counsel claims on appeal, each of his post-conviction ineffective assistance of counsel claims which the district court dismissed as repetitive were in fact new claims.
In State v. Lee, 14-2374, pp. 8-9 (La.9/18/15), 181 So.3d 631, 638, another post-conviction capital case, we explained that an “attempt to re-litigate a claim that has been previously disposed of, by couching it as a post-conviction ineffective assistance of counsel claim, [should be] generally unavailing.” As we found in Lee, those of Blank’s post-conviction ineffective assistance of counsel claims predicated upon issues which were in fact considered on appeal are not truly new claims under La.C.Cr.P. art. 930.4(A). Moreover, even a claim which the district court has erroneously dismissed on procedural grounds does not necessarily warrant remand. State v. Singer, 09-2167, pp. 1-2 (La.10/1/10), 45 So.3d 171, 171-72 (per curiam); see also La.S.Ct.R. X, § 1(a)(4) (supervisory writ grant based on a lower court’s erroneous interpretation or application of law is generally not warranted unless the Court finds that the error “will cause material injustice or significantly affect the public interest.”).
l3The district court correctly dismissed several of Blank’s ineffective assistance of counsel claims as repetitive because we addressed their underlying substance on appeal.[2] A thorough assessment of Blank’s post-conviction claims reveals further that even those claims which the district court erroneously dismissed as repetitive do not warrant further review, as explained below.
Although Blank is correct that his claim of ineffective assistance of counsel at the penalty phase was not litigated on appeal, he fails to show grounds for remanding it: Trial counsel called several penalty phase witnesses, including Blank’s *97 family members and mental health experts who testified in detail about his organic brain damage and cognitive defects.[3] Under the well-established standard for. ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in State v. Washington, 491 So.2d 1337, 1339 (La.1986), Blank fañs to show he was prejudiced by the omission of evidence of his troubled background in a case in which jurors heard his detailed confession to the murders of Ms. Philippe, Mr. Rossi, Mrs. Brock, Mr. and Mrs. Acuri, and Mrs. Bourgeois, and the attempted murders of Mr. and Mrs. Millet. Blank, 04-0204, p. 7 n. 3, 955 So.2d at 101. It is unreasonable to- conclude that the sentence would have been affected by evidence 14that Blank had a difficult childhood in a case in which jurors heard him admit to savagely attacking Ms. Philippe in her home — hitting her in the head with a trophy before stabbing her. Id., 04-0204, p. 7 n. 4, 955 So.2d at 101. This claim does not warrant remand.
Blank also shows 'no basis for the Court’s intervention as to his various juror misconduct allegations. Although our review of the materials presented, which includes post-conviction counsel’s arguments particularizing the claims with supporting affidavits, shows that the district'court erroneously found the claims lacked the requisite particularity, see La.C.Cr.P. art. 926(B)(3), Blank shows no basis for remanding them. Under the jury shield law, see La.C.E. art. 606(B), courts áre prohibited from inquiring into the jury’s deliberative process, except in cases in which the petitioner shows that extraneous prejudicial information influenced the deliberations. The rule originates in the common law and serves the substantial interests of finality and confidentiality in , criminal cases. See, e.g., Tanner v. United States, 483 U.S. 107, 117, 107 S.Ct. 2739, 2745, 97 L.Ed.2d 90 (1987) (“By the beginning of' this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict.”). . Because none of the alleged misconduct pertained to or derived from a prohibited external source, Blank’s claims must fail and no remand for the taking of juror testimony in the district court is warranted..
As for Blank’s claim that he was denied a fair and impartial tribunal, the district court was correct that he should have raised the claim earlier. The grounds on which the. claim rests — that because Judge Peytavin was previously an assistant district attorney who prosecuted his brother for unrelated offenses, he was incapable of serving impartially- in this case — were known to Blank before trial. I sLa.C.Cr.P. art. 674 .requires the party desiring recusal to file a written motion assigning the grounds therefore immediately after the supporting facts are discovered; Blank has instead waited several years. Further, to the extent that he alleges counsel erred by failing to file a motion to recuse Judge Peytavin, his claim *98 also fails. La.C.Cr.P. • art. 671(A)(1) lists the grounds for recusal, providing, in part, that a judge shall be recused when he-is biased) prejudiced, or personally interested in’the cause to such an extent that he would be*unable to conduct a fair and impartial trial. Blank does not show that Judge Peytavin was in any way biased or prejudiced,-much less to such an extent that he was incapable of serving as an impartial arbiter of these proceedings. See State v. Edwards, 420 So.2d 663, 673 (La.1982) (it is well-settled that a trial judge is presumed impartial); State v. Collins, 288 Sd.2d 602, 604 (La.1974) (same). Accordingly, Blank cannot show that counsel unreasonably decided not to file'a motion to recuse. See generally State v. Kenner, 336 So.2d 824, 831 (La.1976) (counsel does not err in not undertaking futile steps). The district court reached the correct result when it dismissed this claim.
As for Blank’s final procedural complaint, that the' district court erroneously dismissed as repetitive his claim of actual innocence of the murder of Lillian Philippe, ’ Blank shows no' basis for this Court’s 'intervention. His póst-conviction attempt to overturn his conviction and sentence by presenting evidence which in his view casts doubt on the reliability of his confession falls short of the high standard contemplated in State v. Conway, 01-2808 (La.4/12/02), 816 So.2d 290, and further articulated’ in State v. Pierre, 13-0873 (La. 10/16/13), 125 So.3d 403, according to which a post-conviction petitioner asserting his actual innocence (not based on DNA) must present “new material, noncumulative and conclusive evidence which meets an extraordinarily high standard, and which undermin[e]s Rthe prosecution’s entire case.” Conway, 01-2808, p. 1, 816 So.2d at 290-91’. In evaluating the actual innocence claim in Pierre, we clarified that a free-standing claim for post-conviction relief must rest on new-facts so compelling that no reasonable juror could have voted to convict with knowledge-thereof. Pierre, 13-0873 p. 4, 125 So.3d at 409. Blank’s alleged “new’facts”—that -undisclosed law enforcement documents indicate it was impossible for him to have accessed the Philippe home in the manner detailed in his confession—fail this standard. That investigators possessed doubt as to how -he physically accessed the-home, but not as to whether• he actually entered it, is not conclusive evidence of his innocence. This claim -does not warrant further consideration. See Singer, 09-2167, supra (post-conviction petitioner- sought new. trial based on co-defendant’s recantation; district court found the claim time-barred but the court of appeal reversed and remanded for consideration in light of new facts; on review, this Court granted writs and reinstated the summary denial because the supporting evidence was not new, material, noncumulative, and conclusive evidence of actual innocence).
As for those claims which the district court rejected after considering the merits, Blank also shows no basis for relief. Under the standard for ineffective assistance of counsel set out in Strickland, supra, a reviewing court must reverse, a conviction if the petitioner establishes (1) that counsel’s performance fell below an objective standard, of reasonableness under prevailing professional norms; and (2) that counsel’s inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.
First, Blank urges counsel’s performance fell below professional norms because ’ counsel failed to vigorously litigate the admission of his ’ confession on the ground that it did not reliably establish by clear and convincing evidence that he was the . person ■ who committed the other *99 crimes. When other crimes evidence is |7admitted, the state must show by clear and convincing evidence that the defendant is the person who committed the other acts. La.C.E. art. 404; State v. Davis, 449 So.2d 466, 468 (La.1984).
Blank asserts that trial counsel has provided no justification for the failure to present expert witnesses to cast doubt on his confession’s reliability. At the eviden-tiary hearing, counsel explained his efforts to gather academic and medical records to shed light on relator’s impaired cognitive function and demonstrate that his confession was involuntary, but conceded that an expert opinion about Blank’s mental frailties would have also supported the motion to suppress. However, even assuming counsel could have reasonably done more to bolster the motion to suppress, such as present an expert opinion, Blank cannot show that those efforts would have resulted in his confession being excluded as unreliable in a ease in which his confession provided critical information about Ms. Philippe’s murder that had not been released to the public, such as the fact that a trophy was used to beat her, that the intruder rifled through her purse and left it in her bathroom, that the safe was in the bedroom closet, and that his confession contained details about the other murders that only the perpetrator would know: Blank, 04-0204, p. 23, 955 So.2d at 112. The district court correctly rejected this claim.
Blank also shows no entitlement to relief based on claims that counsel rendered'ineffective assistance' at the guilt phase of trial. He urges that counsel erred by failing to undercut the probative value of his confession by exposing discrepancies between it and the other evidence; ' emphasizing other suspects; and presenting an expert opinion to explain why it should be discredited. He compares his case with Soffar v. Dretke, 368 F.3d 441, 473-74 (5th Cir.2004), amended on reh’g in. part, 391 F.3d 703 (5th Cir.2004), a Texas capital post-conviction case in which the Fifth Circuit, found that counsel rendered ineffective assistance by failing |sto interview and present the single ■ known eyewitness whose account would have directly refuted the defendant’s confession, the only evidence'linking him to the crime. Id. The Fifth Circuit found that the error had “a clear negative impact on the outcome.” Soffar, 368 F.3d at 443-74, 478.
Despite any parallels that might be drawn between this case and Soffar, unlike in Soffar, Blank does not show or even allege that counsel overlooked a “silver bullet” — a single witness or item of evidence capable of disproving his confession. Rather, he urges that the combined effect of counsel’s failures would have undercut his confession. Judicial scrutiny of counsel’s performance is highly deferential and reviewing courts . indulge . a strong presumption that it fell within, the wide„range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. At the evidentiary hearing, counsel explained that his trial strategy- was ,to draw as little attention as possible to the unadjudicated homicides and to focus on creating reasonable doubt in the Philippe case. Counsel was aware of the law enforcement .doubts and physical constraints surrounding some aspects of Blank’s confession, specifically as to how he gained entry into Ms. Philippe’s home, and exploited these vulnerabilities on cross-examination, By the same token, trial counsel was also aware that Blank had reportedly made additional statements on the drive back to Louisiana, further implicating himself, along with another person; and that a wristwatch identified as having belonged to victim Joan Brock was discovered in a burn pile outside a residence in which *100 Blank spent time. Against the backdrop created by his sweeping admission of guilt, coupled with this knowledge of other incriminating evidence, counsel reasonably saw his strategic options as very limited. As counsel explained at the evidentiary hearing, a perception that his defense strategy was to nit-pick the state’s case would have risked an incurable loss of credibility with the jury. Nevertheless, contrary to 19B lank’s post-conviction claims, counsel did emphasize some of the discrepancies, ie., as to the theory of his entry into Ms. Philippe’s home and the Millets’ inability to identify him, while deliberately and justifiably avoiding others. Counsel’s tactics were not unreasonable. See Wiggins v. Smith, 539 U.S. 510, 527, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003) (“In assessing the reasonableness of an attorney’s investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”); Sanders v. State, 738 S.W.2d 856, 858 (Mo.1987) (“The selection of witnesses and the introduction of evidence are questions of trial strategy and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel.”); State v. Felde, 422 So.2d 370, 393 (La.1982) (the fact that a particular' strategy fails does not establish ineffective assistance). The district court correctly rejected this claim.
Next, Blank claims counsel erred by failing to present evidence of other suspects. At trial, the state presented testimony indicating that several suspects, including victims’ relatives, had been investigated and ruled out. Blank, 04-0204, p. 2, 955 So.2d at 98. According to trial counsel, the state disclosed suspect lists for each homicide, which he used to conduct independent investigations. Having found nothing helpful through those investigations, counsel decided not to emphasize whatever suspicions may have once existed as to other individuals because doing so would have been purely speculative. Blank presents nothing to show that counsel ignored any viable means of showing third party liability. La.C.Cr.P. art. 930.2; see generally Jones v. Jones, 988 F.Supp. 1000, 1002-03 (E.D.La.1997) (before reviewing court will reverse for failure to investigate, inmate must show that attorney “fail[ed] to investigate a plausible line of defense or interview available witnesses.”). The district court correctly rejected this claim.
|inNext, Blank claims counsel erred by failing to present experts to explain that his confession was of dubious worth in light of his various mental frailties. Although counsel’s stated reason for not introducing such an expert opinion was flawed,[4] given that such testimony would have been admissible to enable jurors to determine what weight to attribute to the confession, see La.C.Cr.P. art. 703(G), Blank does not show that the error undermined the verdict. Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). An expert opinion similar to those presented at the evidentia-ry hearing would have been insufficient to convince reasonable fact-finders that Blank was so mentally feeble as to have falsely confessed not only to brutally attacking and killing Ms. Philippe but also to several others. Contrary to Blank’s urging, unlike in Soffar, in which the state’s case consisted only of the defendant’s uncorroborated confession and, significantly, in which the *101 defendant had a history of giving false confessions, see 368 F.3d at 478-79, detailed portions of Blank’s confession which had not yet been made public were corroborated by the physical evidence. In addition, the state presented evidence that Blank knew some of his victims and had gambled large amounts of cash at area casinos shortly after the robberies, in far in excess of his income. Blank, 04-0204, pp. 6-7, 23, 955 So.2d at 101, 112. Because the omitted opinion testimony was not reasonably likely to have affected the jury’s determination, no prejudice resulted.
Next, Blank claims the state presented false testimony from crime scene technician George Schiro, pertaining to how he accessed Ms. Philippe’s home. As Blank sees it, Schiro’s confirmation that his report mentioned the blade of green _Jjjgrass[5] observed in the attic was false testimony because it' was not Schiro’s report that documented the grass. However, Blank waived this claim when he failed to lodge an objection to the allegedly false testimony. La.C.Cr,P. art. 841. In any event, because he asserts (without addressing whether the claim was preserved) that trial counsel did not receive a copy of Schiro’s report[6] upon which to base- an objection, we have considered the merits out of an abundance of caution.
Pursuant to Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), a petitioner must receive a new trial if he shows that the prosecutor suborned perjury and “‘the false testimony could ... in any reasonable likelihood have affected the judgment of the jury_’” Id. (quoting Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959)). Even granting that Schiro’s testimony can be construed as false, to the extent he confirmed that it was his report that documented the blade of grass, although it was actually Officer Brenn’s report, before false testimony will require reversal, the petitioner must show that the falsehood might have affected the verdict. Meeting this standard proves difficult for Blank. ■ Whether the grass was referenced in Schiro’s report or Brenn’s report is immaterial in a case in which Schiro testified that he personally observed the grass in the attic. Compare State v. Whitley, 92-3312 (La.4/29/94), 637 So.2d 459 (Court denies relief to inmate who shows that important state witness lied about state’s agreement to dismiss pending charges in return for testimony because “given other evidence against him, there is no reasonable likelihood that the alleged false testimony could have affected the | ^outcome of the trial.”). Blank makes no showing that this alleged falsehood was' even remotely capable of affecting the verdict. The district court correctly rejected this claim.
Next, Blank claims the state suppressed exculpatory or impeachment evidence in violation of its duty to disclose favorable evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Blank disputes the district court’s finding that most of the allegedly suppressed evidence whs in fact disclosed. At the conclusion of his argument, however, he summarizes by urging that, regardless of whether the evidence *102 was disclosed, he was prejudiced by its omission at trial.
Pursuant to Brady and its progeny, a prosecutor does hot breach his duty to disclose favorable evidence' “unless the omission is of sufficient significance to 'Result in the denial of the defendant’s right to a fair trial.” United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976); State v. Willie, 410 So.2d 1019, 1030 (La.1982).
In dismissing Blank’s Brady claims, the district court found the following:
At the evidentiary hearing, exhibit after exhibit was offered and accepted into evidence demonstrating that trial counsel did have the FBI reports, they were given an extensive list of names of individuals for whom law enforcement sought fingerprints, and letters were provided indicating the involvement of a psychic.... The State demonstrated that the majority of the items which the defense claimed to have not received were, in fact, provided to defense counsel. Considering the confession of the defendant, as well as the corroborating [evidence], .., this court cannot say that the fairness of Mr. Blank’s trial was inhibited.
District Court Ruling on Applications for Post-Conviction Relief, p. 6 (emphasis added). Blank does not show that the district court erred.
Trial counsel acknowledged that, in response to the motion for a bill of particulars, the state disclosed evidence of the law enforcement doubts about the 1¶ (¡perpetrator’s manner of entry into Ms, Philippe’s home, the information that was in the allegedly suppressed FBI reports; law enforcement suspicions about other persons of interest; and law enforcement doubts as to' whether all the homicides were related, It was also adduced at the evidentiary hearing that the state' disclosed all the information that was relied on to prepare whichever FBI reports were not- disclosed and that, in any event, the FBI analyses therein were not favorable becausé the suspect profiles they developed implicated Blank. Thus, he does not show that the state suppressed anything favorable among the FBI reports.
As to- the allegedly suppressed state police reports, which Blank claims he could have used to cross-examine Sgt. Breaux about the pliers used to cut victims’ power lines, he also. shows no violation. Blank complains that the reports would have undermined the officer’s testimony that the pliers admitted at trial were used at “multiple crime scenes” because the reports indicated the pliers did not .conclusively match cuts found at two scenes. Blank fails to show that he was deprived of a fair trial without this particular opportunity for cross-examination, however, given that the verdict would not have been appreciably affected even if jurors had learned that the pliers they were shown in court could be linked to several but. not all of the crimes. Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). No error is shown.
Finally, Blank shows no grounds for relief based on his argument that the cumulative effect of the claimed errors rendered the proceedings fundamentally unfair or in light of the five remaining claims he merely incorporated by reference. Although we have previously reviewed cumulative error arguments, we have never endorsed them. See, e.g., State v. Strickland, 94-0025, pp. 51-52 (La.11/1/96), 683 So.2d 218, 239; State v. Taylor, 93-2201, (La.2/28/96), 669 So.2d 364 (unpub’d appx.); State v. Tart, 93-0772, p. 55 (La.2/9/96), 672 So.2d 116, 164; State v. Copeland, 530 So.2d 526, *103 544-45 (La.1988) (citing State v. Graham, 422 So.2d 123, 137 (La.1982)). Given Blank’s failure to show prejudice as a result of any of the claimed errors, he cannot show that their combined, effect entitles him to relief. See, e.g., Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) (rejecting cumulative error claim, finding that “twenty times zero equals zero”). And because Blank provides no supporting arguments for his remaining claims, he has waived them. See La.S.Ct.R. X, § 4(3)(d) (requiring “argument of each assignment of error on the facts and the law....”); La.S.Ct.R. VII, § 6 (assignments of error made but not briefed considered abandoned); State v. Bay, 529 So.2d 845, 851 (La.1988).
Blank has now fully litigated his application for state post-conviction relief. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Blank’s claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless Blank can show that one of the narrow exceptions authorizing the filing of a successive' application applies, he has exhausted his right to state collateral review. The District Court is ordered to record a minute entry consistent with this per curiam.
JOHNSON, C.J., dissents and assigns reasons.
■ CRICHTON, J,, additionally-concurs and assigns reasons. '

. In 1997, an Ascension Parish grand jury indicted relator for first degree murder. In 1998, the trial court granted Blank’s motion for change of venue and moved the case to Terrebonne Parish.

. Because this Court considered the underlying issues on appeal, the district court did not err in dismissing the following claims as repetitive: that the trial court failed to balance the prejudicial effect of the evidence of the other homicides against its probative value; and that counsel failed to file a motion to quash on the ground that discrimination infected grand jury foreperson selection; that counsel failed to object to an erroneous jury instruction about the purpose of other crimes evidence; that counsel failed to object to the use of a short-form indictment; and that counsel elicited testimony about his criminal record, La.C.Cr.P. art. 930.4(A); State v. Blank, 04-0204 (La.4/11/07), 955 So.2d 90.

. Dr. Milton Rhea informed jurors that, although Blank exhibited a full-scale IQ of 85 and average comprehension ability, he had great difficulty with abstract concepts and predicting consequences. Dr. Rhea explained further that Blank’s test performances were consistent with those of a special education population and supported a diagnosis of developmental disorder which would make him suitable for rehabilitative treatment, Dr. Rhea also testified that Blank’s personality profile (as measured by the widely-used Minnesota Multiphasic Personality Inventory or "MMPI”) indicated pervasive mental ill.ness. Dr. Ronald Goebel also testified that Blank suffered with abnormal brain function and was functionally'illiterate.

. Counsel testified at the evidentiary hearing that he believed it was necessary that Blank had entered a plea of not guilty by reason of insanity to be permitted to introduce evidence pertaining to his cognitive abilities at the time of the confession.

. The evidentiary significance of the grass being green, as opposed to dried and brown, is that it was indicative of a recent entry from outside.

. Notably, counsel conceded at the evidentia-ry hearing that he was informed in writing before trial that investigators had observed a blade of green grass in the attic. Counsel also testified that he read Dowell’s .and/or Schiro’s report and was aware of the doubt it cast on the entrance theory.