WEIMER, J.,
dissenting.
hThe majority presents a well-researched and balanced opinion, which addresses many of the arguments opposed to the majority’s conclusion. However, while acknowledging there has been no hint of fraud regarding Mr. Toney’s testament, the majority ultimately elevates form over the substance of what Mr, Toney intended.
Although Mr. Toney’s testament would never be considered a textbook example of formal compliance for drafting wills, it bears mentioning that the testament clearly conveys Mr. Toney’s intent to leave his estate to his brother-in-law. Not only is it undisputed that the testament itself conveys that intent, but it is also undisputed that when his wife was alive, Mr. Toney executed a previous testament bequeathing the entirety of his estate to her unless she predeceased him. Furthermore, if his wife predeceased him, Mr. Toney directed that the entirety of his estate be given to her brother, Richie Gerding, who is the same brother-in-law named as the sole legatee in the testament at issue in this case.
For all the majority’s otherwise thorough legal exposition, without citation to any authority, the majority dismisses the possibility of “reconstructing] a valid attestation clause out of parts of three separate clauses, one of which is the ordinary notarial certification attached to any authentic act.” Succession of Toney, 16-1534, op. Rat 407-08 (La. 5/3/17). In the face of such clear indicators of the testator’s intent, piecing together the formal aspects to give effect to the substance of the testament is precisely the sort of exercise that the law favors. See, e.g„ La. C.C. art. 1611 (“The intent of the testator controls the interpretation of his testament.”) and La. C.C. art. 1612 (“A disposition should be interpreted in a sense in which it can have effect, rather than in one in which it can have none.”).[1]
Inasmuch as the majority acknowledges that giving effect to Mr. Toney’s testament would require the court to “reconstruct a valid attestation clause,” the majority also acknowledges that this is not a situation in which formalities are wholly lacking. Succession of Toney, op. at 407-08. Therefore, the following longstanding principles, which the majority properly reproduces, but does not heed, directly apply:
There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct: It may follow' the form suggested in the statute or use a form substantially similar, thereto. The attestation clause is designed to evince that the facts and circumstances of the *410 confection and execution of the instrument conform to the statutory requirements. In construing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument.
Succession of Toney, op. at 405 (quoting Succession of Morgan, 257 La. 380, 242 So.2d 551, 552 (1970).
| ¾As this court has previously recognized, in “adopting] the statutory will from the common law,” the legislature sought “to avoid ... rigid formal requirements.” Succession of Guezuraga, 512 So.2d 366, 368 (La. 1987). Indeed, the legislature has indicated that the “notarial testament” (formerly referred to in Guez-uraga as the “statutory will”)[2] does not require exactitude, only that the testator, notary, and witnesses declare what is “substantially similar” to the attestation clause provided in the Civil Code. See La. C.C. art. 1577(2).
In the instant case, Mr. Toney’s own attestation clause indicates the testament was signed by Mr. Toney, who declared it to be his last will and testament in the presence of the witnesses, but fails to attest that Mr. Toney or the witnesses signed the will in the presence of the notary. Additionally, the signature of Mr. To-ney attests that he declares to the “undersigned authority” (ie., the notary) that he is signing, but does not attest that he is signing in the presence of the notary. However, the notary signed an attestation clause stating that the testament was subscribed, sworn, and acknowledged by Mr. Toney and by the three witnesses. When all the attestation clauses are considered together-an approach consistent with La. C.C. arts. 1611 and 1612 and with the liberal interpretative standard described by this court in Guezuraga—there was substantial compliance with the requirements of La. C.C. art. 1577.
Pointing to the provision in La. C.C. art. 1577(1) that “the testator . .■. shall sign his name at the end of the testament and on each other separate page,” the majority also finds Mr. Toney’s initials on the first two pages of the testament are insufficient, giving no effect to the witnesses’ notarized attestation that Mr. Toney signed thej4 testament. With scant analysis, the majority effectively overrules two appellate court decisions, Succession of Squires, 93-1589 (La.App. 3 Cm. 6/1/94), 640 So.2d 813, and Succession of Armstrong, 93-2385 (La. App. 4 Cir. 4/28/94), 636 So.2d 1109. In both Squires and Armstrong, the testator fully signed the last page of a testament, but placed initials on the first page. The Squires court found “these are minor departures from [sic] and have nothing to do with any attempted fraud. Common sense dictates that they should not nullify the clear intent of the testator.” Squires, 93-1589 at 5, 640 So.2d at 815. Similarly, the Armstrong court upheld the testament, explaining that “[t]here is little formality required for signatures which come in all shapes and sizes and are often illegible.” Armstrong, 93-2385 at 5, 636 So.2d at 1111.
I find the principles just quoted from Squires and Armstrong to be compelling, especially in light of the legislature’s movement away from the numerous formalistic wills previously recognized by Louisiana law. See La. C.C. art. 1574, revision cmt. (a) (“This Article changes the law by suppressing the ‘public and private nuncupa-tive’ and ‘mystic’ testaments found in the *411 Civil Code of 1870.”).[3] In over 20 years since they were penned, the Squires and Armstrong opinions have not been criticized in any reported decision in the jurisprudence. These opinions should not be so lightly cast aside, as the majority now does.[4] Neither should no effect be given to the) 5 witnesses’ sworn testimony—recorded on the testament by the notary-that it was Mr. Toney who signed all pages of the testament. See La. R.S. 35:3 (“Oaths and acknowledgments, in all cases, may be taken or made by or before any notary public duly appointed and qualified in this state.”); see also In re Succession of Holbrook, 13-1181, p. 11 (La. 1/28/14), 144 So.3d 845, 853 (quoting Succession of Armstrong, 636 So.2d at 1111 (“Under Louisiana law, there is a presumption in favor of the validity of testaments in general and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption.”).
In conclusion, Mr. Toney’s intent to donate his estate to his brother-in-law, Richie Gerding, is unrefuted. There has been no allegation of fraud regarding the drafting or the execution of his testament. Even so, under the majority’s ruling, the result for Mr. Toney’s estate will be the same as if fraud had been actually proven, as this testament will be annulled and, it appears, his estate will lapse into intestacy. This result not only defeats Mr. Toney’s intent, but it runs contrary to the substantial compliance standard embodied in La. C.C. art. 1577, a standard which has previously been recognized by this court’s jurisprudence. Thus, I respectfully dissent.

. In its analytical approach, the majority's opinion appears to be oriented toward piecing together individual formal errors to invalidate the testament, rather than oriented. toward piecing together the individual instances of formal compliance to uphold the testator’s intent. The majority’s glass-half-empty orientation is contrary not only to the principles just cited from the law of testaments, but the approach is contrary to this court's view in other areas of the law. For example, in criminal law, this court has recently upheld a conviction notwithstanding tire claim of cumulative error, remarking: “Given [defendant's] failure to show prejudice as a result of any of the claimed errors, he cannot show that their combined effect entitles him to relief. See, e.g., Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) (rejecting cumulative error claim, finding that 'twenty times zero equals zero’).” State v. Blank, 16-0213, p. 14 (La. 5/13/16), 192 So.3d 93, 103.

. See La. C.C. art. 1574, revision cmt. (a) (“The so-called statutory testament is revised and retained by this Article, to be called the notarial testament.”).

. As reflected in La. C.C. art. 1574 itself, in place of the five forms of testaments previously recognized, “[tjhere are two forms of testaments: olographic and notarial."

. The rulings in Squires and Armstrong in favor of upholding testaments against challenges based on the use of the testator’s initials are consistent with the general principle of upholding the testator’s intent. Those rulings are also consistent with another principle from the law of registry, which, by analogy, offers a pointed lesson regarding the use of initials on a written instrument when the full name appears elsewhere in the instrument:
A recorded instrument is effective with respect to a third person if the name of a party is not so indefinite, incomplete, or erroneous as to be misleading and the instrument as a whole reasonably alerts a person examining the records that the instrument may be that of the party. [Emphasis added.]
La. C.C. art. 3353 (governing the effect of indefinite or incomplete name).