PER CURIAM:
Denied. In 2004, a Jefferson Parish jury found relator, Dustin Dressner, guilty as charged of the first degree murder of Paul Fasullo. At trial, Fasullo's wife, Shannon, testified that she answered a knock on her door around 10:30 p.m. on June 6, *541 2002, to find Dressner (with whom she was familiar) and a black male asking to come inside to buy drugs. When Shannon declined and turned to close her door, one of the men struck her over the head with a glass wine bottle and both entered, armed with knives that Dressner had taken from a friend's apartment earlier in the day. The commotion woke Paul, who struggled with Dressner and ultimately sustained multiple stab wounds, lacerations, and abrasions to his chest, upper neck, and head areas; one of the chest wounds proved fatal. Shannon retreated to her bedroom in an attempt to protect her two-year-old daughter. Dressner chased after Shannon, who had begun to call 911, and he sliced her throat. After a prolonged struggle of her own, Shannon locked herself in the bathroom, but Dressner's accomplice kicked down the door. The men continued the attack, stabbing Shannon at least twice more before ultimately fleeing the scene. Shannon survived her grave wounds and later identified Dressner in a six-person photographic lineup.
The state presented a detailed recorded statement in which Dressner admitted his involvement in the home invasion murder and that he inflicted the fatal stab wound to Fasullo's chest. In the same statement, Dressner identified a black male named "Kelly" (Kellen Parker) as the other individual who entered the Fasullos' home with him and Troy Arnaud as a third man who was present in a car parked outside the home. Dressner assisted the police in identifying relevant addresses where his accomplices could be found and in locating discarded pieces of the weapons used in the attack.
After finding Dressner guilty as charged, jurors unanimously agreed to impose a sentence of death in light of the aggravating circumstances that the offense was committed in an especially heinous, atrocious, or cruel manner, and that the offender knowingly created a risk of death or great bodily harm to more than one person. The trial court sentenced him to death by lethal injection in accord with the jury's determination. This Court affirmed the conviction and sentence. State v. Dressner , 08-1366 (La. 7/6/10), 45 So.3d 127, cert. denied , 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011).
In 2011, Dressner filed a pro se "shell" application for post-conviction relief. Thereafter, appointed counsel enrolled and filed two lengthy supplemental applications alleging a total of 16 claims. On November 16, 2017, the district court dismissed seven of the claims on procedural grounds. On January 12, 2018, the district court summarily denied the remaining claims with written reasons.
As an initial matter, Dressner contests the district court's procedural rulings, urging that, because he did not raise any ineffective assistance of counsel claims on appeal, each of his post-conviction ineffective assistance of counsel claims which the district court dismissed as repetitive were in fact new claims.
In State v. Lee , 14-2374, pp. 8-9 (La. 9/18/15), 181 So.3d 631, 638, another post-conviction capital case, we explained that an "attempt to re-litigate a claim that has been previously disposed of, by couching it as a post-conviction ineffective assistance of counsel claim, [should be] generally unavailing." As we found in Lee , Dressner's post-conviction ineffective assistance of counsel claims predicated upon issues which were in fact considered on appeal are not truly new claims under La.C.Cr.P. art. 930.4(A). The district court correctly dismissed part of one of Dressner's ineffective assistance of counsel claims under La.C.Cr.P. art. 930.4(A) -that trial counsel failed to object to the trial court's "unreasonable demands" of *542 the jury-as having been fully litigated on appeal. See Dressner , 08-1366 (unpub'd appx., pp. 1-5).
Dressner also argues that the district court in other instances denied claims as repetitive under La.C.Cr.P. art. 930.4(C) (for claims raised in the trial court and inexcusably omitted on appeal) without first ordering him to state the reasons for his failure under La.C.Cr.P. art. 930.4(F). We note first that the district court afforded Dressner an opportunity to respond in writing to the state's procedural objections citing to La.C.Cr.P. art. 930.4(C). Dressner filed a reply, so the district court has substantially complied with La.C.Cr.P. art. 930.4(F). Moreover, even a claim which the district court has erroneously dismissed on procedural grounds does not necessarily warrant remand. State v. Singer , 09-2167, pp. 1-2 (La. 10/1/10), 45 So.3d 171, 171-72 (per curiam); see also La.S.Ct.R. X, § 1(a)(4) (supervisory writ grant based on a lower court's erroneous interpretation or application of law is generally not warranted unless the Court finds that the error "will cause material injustice or significantly affect the public interest."). A thorough assessment of Dressner's post-conviction claims reveals further that even those claims which the district court might have erroneously dismissed as repetitive do not warrant further review, as explained below.
First, Dressner is correct that his claim of ineffective assistance of counsel for failing to present evidence of mental illness to suppress his confession was not litigated on appeal. However, he fails to show grounds for remanding it. Dressner fails to identify what mental illness evidence he would have had trial counsel introduce or how it might have undermined the voluntariness of his confession. He refers to this evidence only in the abstract-"an extensive history of mental illness and poly-substance abuse" and "the myriad mental health information"-and in no way that persuasively demonstrates how the voluntariness of his confession might be called into question. Because Dressner has not demonstrated that counsel would have been successful in suppressing his confession on the strength of any such evidence, he has not adequately proven deficient performance or prejudice. While the district court invoked an improper procedural bar, the claim was worthy of summary denial on its merits under La.C.Cr.P. art. 929(A). This claim does not warrant remand.
Next, Dressner urges four related claims which challenge the death penalty on varied grounds. First, he contends that Louisiana's lethal injection protocol violates the Eighth Amendment's prohibition against cruel and unusual punishment.[1] Second, he asserts that the death penalty violates international human rights law because it constitutes an arbitrary deprivation of life and is exacerbated by his "significant mental illness." Third, Dressner argues that the Fourth and Eighth Amendments, customary international law, and the International Covenant on Civil and Political Rights entitle him to a fair clemency process which complies with a minimum level of due process. Fourth, he avers that Louisiana's death penalty scheme is unconstitutional because it is imposed in an arbitrary and discriminatory manner and does not sufficiently narrow *543 the class of offenders eligible for it. The district court procedurally barred the first, second, and fourth of these related claims under La.C.Cr.P. art. 930.4(C) as having been raised in the trial court and inexcusably omitted on appeal. The district court also ruled that the first, third, and fourth of these related claims did not present cognizable claims for relief under La.C.Cr.P. art. 930.3.
Even assuming arguendo that the district court should have reached the merits of these claims, Dressner shows no basis for remand. His claim concerning Louisiana's lethal injection protocol requires him to show that the procedure "creates a demonstrated risk of severe pain .... [and] that the risk is substantial when compared to the known and available alternatives." Baze v. Rees , 553 U.S. 35, 61, 128 S.Ct. 1520, 1537, 170 L.Ed.2d 420 (2008). A related claim is pending in the United States District Court for the Middle District of Louisiana, where-on July 16, 2018-Judge Shelly Dick imposed a 12-month extension to an order temporarily staying all executions in Louisiana. In light of that pending matter, Dressner's execution protocol claim does not warrant remand or relief in its current posture.
Further, although international law is relevant in interpreting the Eighth Amendment's ban on cruel and unusual punishment, see Graham v. Florida , 560 U.S. 48, 80, 130 S.Ct. 2011, 2033, 176 L.Ed.2d 825 (2010), Dressner introduces no authority for the idea that his execution is prohibited by international law. Insofar as Dressner argues the ICCPR should apply, the treaty is not self-executing, meaning the Court may not enforce it in the absence of corresponding state or federal legislation. See Inapplicability of ICCPR to Death Penalty Case, 95 Am. J. Int'l L. 878, 879 (2001) ; see also S. Res. of Advice and Consent to Ratification of the ICCPR, 102d Cong., 138 Cong. Rec. S4781, S4783 (daily ed. Apr. 2, 1992) (declaring that "the provisions of articles 1 through 27 of the Covenant are not self-executing."). These claims do not warrant relief or remand for additional factual development.
Lastly, in order to avoid arbitrary and capricious imposition of the death penalty, an aggravating circumstance used to justify a death penalty "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens , 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). The United States Supreme Court has found that the narrowing function of Zant is satisfied by the specification of circumstances in R.S. 14:30 for differentiating first degree murder from other forms of homicide. Lowenfield v. Phelps , 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). As a result, Dressner is not entitled to a remand for further consideration of this claim.
In sum, Dressner shows no reversible error as to the district court's procedural rulings on the claims identified in his applications as Claims III, VII, VIII, IX, and XVI. The district court correctly invoked the procedural bar of La.C.Cr.P. art. 930.4(A) as to part of Claim XV (related to the trial court's "unreasonable demands" of the jury), and its merits ruling on the remaining part of that claim is addressed below. The district court also procedurally barred Claim X (alleging cumulative error) as one not cognizable in post-conviction relief proceedings, but that claim also is addressed below.
As to those claims the district court rejected after considering the merits, Dressner also shows no basis for relief. All but one of these remaining claims involve *544 allegations of ineffective assistance of counsel. Under the standard for ineffective assistance of counsel set out in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a reviewing court must reverse a conviction if the petitioner establishes (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. When the substantive issue that an attorney has not raised has no merit, then the claim that the attorney was ineffective for failing to raise the issue also has no merit. State v. Williams , 613 So.2d 252, 256-57 (La. App. 1 Cir. 1992) ; see also State v. Kenner , 336 So.2d 824, 831 (La. 1976) (counsel does not err in not undertaking futile steps).
In two related claims (Claims I and XII), Dressner argues that his trial counsels' failure to introduce evidence of the victims' drug use and alleged sexual misconduct toward his girlfriend resulted in prejudice occurring at both the guilt and penalty phases. Prior to trial, defense counsel sought to have this evidence deemed admissible. The fifth circuit ruled that only the evidence of the victims' general drug use was admissible in the guilt phase. See Dressner , 08-1366, p. 14, 45 So.3d at 137 (citing State v. Dressner , 04-0581 (La. App. 5 Cir. 5/20/04) (unpub'd) ). In denying writs, this Court noted that defense counsel would be entitled to reurge the admissibility of all the evidence at the penalty phase (but not necessarily that such evidence would, in fact, be admissible). See State v. Dressner , 04-1199 (La. 5/21/04), 874 So.2d 845.
At trial, Shannon Fasullo testified that she and her husband threw weekly or bi-weekly parties where the participants would partake of certain drugs, including alcohol, marijuana, cocaine, and ecstasy. Dressner , 08-1366, p. 4 n.9, 45 So.3d at 131. Therefore, the jury clearly was informed in the guilt phase concerning the victims' general drug use. To the extent trial counsel did not seek to introduce in the guilt phase evidence of the victims' alleged sexual misconduct, they merely complied with rulings from higher courts. Thus, Dressner shows no deficient performance as to this part of his claims.
Dressner also contends that trial counsel should have sought to introduce evidence of the victims' drug use and alleged sexual misconduct in the penalty phase. As to the former, the jury had already heard this evidence, and a jury in a capital sentencing hearing may consider any evidence offered at the trial on the issue of guilt. See La.C.Cr.P. art. 905.2(A). Therefore, to the extent that trial counsel might have elected not to present cumulative evidence, Dressner has not made an adequate showing either of deficient performance or prejudice.
With respect to the alleged sexual misconduct evidence, Dressner does not cite any additional factors that might have made this evidence more relevant in the penalty phase than it could have been in the guilt phase, where two courts found it not to have any relevance. See La.C.Cr.P. art. 905.2(A) ("The sentencing hearing shall focus on the circumstances of the offense, the character and propensities of the offender, and the victim, and the impact that the crime has had on the victim, family members, friends, and associates."). Therefore, he shows no likelihood of success in the event counsel would have again sought to admit the sexual misconduct evidence in the penalty phase. As a result, he fails to prove deficient performance or prejudice. The district court correctly rejected these claims.
*545 Next, Dressner claims that trial counsel erred by failing to take adequate steps to prevent an earlier conviction for simple robbery from being introduced against him at the penalty phase. He asserts that trial counsel should have raised a purported actual conflict of interest that existed when he and his codefendant in the earlier matter were represented by the same attorney.
This claim fails on its merits for several reasons. First, Dressner essentially argues that trial counsel should have collaterally attacked his Orleans Parish conviction in an improper venue and in an untimely manner.[2] See La.C.Cr.P. arts. 925 (venue for application for post-conviction relief is parish of conviction) & 930.8(A) (setting forth a limitations period of two years from the finality of conviction and sentence to apply for post-conviction relief). Second, because counsel could not have attacked the conviction itself, this Court's precedent specifically allowed the introduction of a felony conviction during the sentencing hearing. See State v. Jackson , 608 So.2d 949, 954 (La. 1992) (limiting the evidence to a "document certifying the fact of conviction and to the testimony of the victim or of any eyewitness to the crime"). Third, the simple robbery conviction would have been admissible under Jackson even as unadjudicated conduct because it was defined as a crime of violence in R.S. 14:2 and the period of limitation for instituting its prosecution had not run at the time of the first degree murder indictment. See Jackson , 608 So.2d at 955. The district court correctly rejected this claim.
Next, Dressner claims counsel erred by failing to take certain steps with respect to the jury's consideration of Troy Arnaud's guilty plea to accessory after the fact to first degree murder. He argues that trial counsel should have filed a motion in limine to prevent the jury from hearing the name of this plea and requested a curative or cautionary instruction to prevent the jury from considering that plea as evidence that a first degree murder actually occurred.[3]
In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions. See La.C.E. art. 609.1(A). Ordinarily, only the fact of a conviction, the name of the offense , the date thereof, and the sentence imposed is admissible. La.C.E. art. 609.1(C) (emphasis added). Thus, there was no arguable basis for excluding the name of the offense for which Arnaud pleaded guilty. Therefore, trial counsel did not render deficient performance by failing to file a motion in limine to exclude the name of the offense.
Additionally, the jurisprudence in Louisiana generally holds that an accomplice is qualified to testify against a co-perpetrator even if the prosecution offers him inducements to testify; such inducements would merely affect the witness's credibility. See State v. Neal , 00-0674, p. 11 (La. 6/29/01), 796 So.2d 649, 658 (citations omitted). Dressner offers no evidence that the mere title of Arnaud's offense had a more damaging or prejudicial effect in the jury's consideration of his guilt than did Arnaud's actual testimony. The district court correctly *546 noted that instead of drawing the jury's attention away from Arnaud's conviction, trial counsel appears to have opted to draw attention to it in an attempt to damage Arnaud's credibility. That this strategy might have failed (or at least did not prove persuasive) does not establish ineffective assistance of counsel. See State v. Felde , 422 So.2d 370, 393 (La. 1982).
Furthermore, Dressner also asserts that trial counsel should have requested a special instruction that the jury not consider the title of Arnaud's plea as evidence that a court had determined a first degree murder occurred. However, he did not supply the district court or this Court with the exact proposed charge that he would have had trial counsel give. Therefore, it is wholly speculative to say that the proposed but unarticulated charge would "not require qualification, limitation, or explanation, and [would be] wholly correct and pertinent." See La.C.Cr.P. art. 807 (concerning special written charges). As a result, Dressner has failed to show deficient performance or prejudice in this respect. The district court correctly rejected this claim.
Next, Dressner contends that trial counsel erred by failing to object to the flight instruction given at trial.[4] However, this instruction tracks with that found in 17 La. Civ. L. Treatise, Criminal Jury Instructions § 5.8 (3d ed.), "Flight of the defendant," where the authors noted that "[t]he proposed instruction is designed for use when the state has presented evidence that the accused fled immediately after the offense or after accusation." The state presented evidence of the former, so the instruction was proper, and trial counsel did not err by failing to object to it. The district court correctly rejected this claim.
Next, Dressner argues that trial counsel rendered ineffective assistance for failing to adequately prepare mental health experts who testified at the penalty phase, thoroughly investigate his need for neuropsychological testing, and present to the jury a more personalized and comprehensive picture of his background, mental infirmities, and circumstances.
A defendant at the capital penalty phase is entitled to the assistance of a reasonably competent attorney acting as a diligent, conscientious advocate for his life. State v. Fuller , 454 So.2d 119, 124 (La. 1984) ; State v. Berry , 430 So.2d 1005, 1007 (La. 1983) ; State v. Myles , 389 So.2d 12, 28 (La. 1980) (on reh'g). Thus, counsel's role at capital sentencing resembles his role at the guilt phase in that he must "ensure that the adversarial testing process works to produce a just result ...." Burger v. Kemp , 483 U.S. 776, 788-89, 107 S.Ct. 3114, 3122-26, 97 L.Ed.2d 638 (1987). A finding of ineffective assistance of counsel at the penalty phase requires a showing that counsel failed to undertake "a reasonable investigation [which] would have uncovered mitigating evidence," and that failing to put on the available mitigating evidence "was not a tactical decision but reflects a failure by counsel to advocate for his client's cause," which resulted in "actual prejudice." State v. Hamilton , 92-2639, p. 6 (La. 7/1/97), 699 So.2d 29, 32 (citing State v. Brooks , 94-2438 (La. 10/16/95), 661 So.2d 1333 ; State v. Sanders , 93-0001 (La. 11/30/94), 648 So.2d 1272 ) ).
*547 In the penalty phase, the jury heard evidence concerning Dressner's educational, mental, social, and criminal history. See Dressner , 08-1366, pp. 36-41, 45 So.3d at 150-53. As to his mental health, the jury heard testimony from Dressner's brother, who described him as "an attention seeker; arrogant; cocky; boastful; very bright; very articulate; very manipulative; [and a] schemer." Id. , 08-1366, p. 37, 45 So.3d at 150.
Trial counsel also presented two experts who testified nearly identically. See Ibid. n.41 (describing that the trial judge chastised defense counsel for wasting two hours of the jury's time by calling a second witness to testify to the same conclusions as the first). Together, the experts indicated that Dressner had a history of Bipolar Affective Disorder, polysubstance abuse and dependency, and a history of Attention Deficit Hyperactivity Disorder. Id. , 08-1366, p. 37, 45 So.3d at 150-51. He suffered a head trauma at the age of six or seven and had previously received inpatient psychiatric treatment and intensive outpatient treatment for substance abuse. Id. , 08-1366, pp. 37-38, 45 So.3d at 151. One of the doctors opined that Dressner "is not mentally ill, he has some responsibility, but he refused the help provided him," and his mental conditions were "highly treatable." Id. , 08-1366, p. 38, 45 So.3d at 151. The other opined that Dressner "understood the criminality of his conduct." Ibid.
In support of his current claim, Dressner relies upon testing that has taken place after his conviction while he has been incarcerated at Louisiana State Penitentiary. He contends that new reports indicate pretrial neuropsychological testing would have revealed that he suffers from organic and/or traumatic brain damage. While the reports state that Dressner might have issues with impulse control and his ability to exercise proper judgment, he fails to attach actual medical records or demonstrate why this subsequent testing is more reliable or accurate than that conducted by his trial experts. Moreover, these conclusions are somewhat cumulative of the evidence the jury considered.
Dressner also faults trial counsel for failing to more properly prepare the penalty phase experts. However, his main complaint rests with one expert in particular (Dr. Vyas), whom he claims was given only a few weeks to prepare. That both experts testified nearly identically undermines this claim and Dressner's ability to show prejudice from any purported lack of preparation time.
Additionally, Dressner avers that trial counsel themselves should have undertaken a more extensive investigation of his mental health. However, given the trial experts' conclusions, Dressner has made no showing that counsel failed to undertake a reasonable investigation that would have uncovered mitigating evidence, as Hamilton requires. Nothing in the retained experts' conclusions raised red flags that might have caused trial counsel to direct or request further testing.
Dressner further argues that trial counsel should have done more to present evidence concerning his parents' mental health histories in the penalty phase. However, Dressner does not claim to have inherited any of his parents' purported mental illnesses, so they do not reflect directly upon his own mental health. To the extent his parents' conditions might have had some tangential effect upon his childhood, Dressner has still not shown any actual prejudice as a result of their omission from evidence at the penalty phase. By nearly any account, Dressner's parents were repeatedly involved in attempting to secure mental and behavioral assistance for him, but without success. Presented with *548 such evidence, the jury could have found-as did one of the trial experts-that Dressner simply "refused the help provided him." Dressner , 08-1366, p. 38, 45 So.3d at 151.
In sum, while Dressner now identifies different evidence that he would have had trial counsel present to the jury, he fails to carry his burden of demonstrating why trial counsel were ineffective in choosing to present to the jury what they did. He has not shown that trial counsel performed deficiently in their penalty phase representation or that the result would have been different had they presented the evidence upon which he currently relies. Trial counsel properly presented to the jury evidence of Dressner's medical history, family and social history, mental illness and cognitive impairments, and substance abuse. The district court correctly rejected this claim.
Next, Dressner contends that trial counsel erred by failing to have him plead "not guilty" and "not guilty by reason of insanity." In doing so, Dressner relies upon much of the same evidence from his previous claim. Though he argues that counsel would have been able to prove insanity by a preponderance of the evidence, Dressner in essence asserts that such evidence would have undermined his level of intent in committing the first degree murder. However, the substance of Dressner's claim is better categorized as one of "diminished capacity," which Louisiana has never recognized. See State v. Lecompte , 371 So.2d 239, 243 (La. 1978) ("[A] mental defect or disorder short of insanity cannot serve to negate specific intent and reduce the degree of the crime."). He makes no showing that trial counsel could have satisfied the actual insanity criteria of proving "the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question." R.S. 14:14. One of Dressner's trial experts testified that he "understood the criminality of his conduct." Dressner , 08-1366, p. 38, 45 So.3d at 151. That conclusion would have undermined any attempt to prove insanity, so Dressner has failed to demonstrate either deficient performance or prejudice. The district court correctly rejected this claim.
Next, Dressner faults trial counsel for failing to argue that the death penalty was a disproportionate punishment because of his youth, mental impairments, and immaturity. However, no federal jurisprudence applies to bar the death penalty in this case. Cf. Roper v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (barring execution of persons under the age of 18 at the time the crime was committed); Atkins v. Virginia , 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (barring execution of persons with intellectual disabilities). Similarly, Dressner has made no showing that he has become mentally insane subsequent to his conviction. See State v. Perry , 502 So.2d 543, 563-64 (La. 1986) ("The State of Louisiana will not execute one who has become insane subsequent to his conviction of a capital crime."). On appeal, this Court conducted an extensive proportionality review and found the death sentence to be an appropriate punishment. See Dressner , 08-1366, pp. 44-54, 45 So.3d at 154-60. No subsequent legal or factual developments call that conclusion into question. As a result, counsel did not render ineffective assistance in this respect. The district court correctly rejected this claim.
Next, Dressner argues that trial counsel failed to protect his due process rights against the trial court's alleged "abuse" of the jurors. In the portion of this claim that is not procedurally barred, Dressner asserts that the trial court made *549 statements that chilled prospective jurors' claims of hardship. While the trial court made statements concerning its skepticism of hardship claims, Dressner has not made alleged that any jurors' claims of hardship were denied or ignored. To the extent that he argues prospective jurors' claims of hardship were chilled by these statements and that trial counsel should have questioned them about hardship during voir dire, Dressner's claims are wholly speculative and conclusory. He points to no juror actually seated for trial who suffered any hardship that might have affected the ultimate outcome. As a result, Dressner has failed to make any showing of deficient performance or prejudice concerning his trial counsels' failure to object to the trial court's statements concerning hardship. The district court correctly rejected this claim.
In connection with some of his ineffective assistance claims, Dressner has argued that appellate counsel rendered ineffective assistance for failing to raise certain claims (many or all of which were not raised by trial counsel and, thus, not preserved for review). However, as a general matter, a defendant does not have the right to designate issues counsel must raise on appeal. See Jones v. Barnes , 463 U.S. 745, 751-53, 103 S.Ct. 3308, 3312-13, 77 L.Ed.2d 987 (1983). In any event, Dressner is entitled to relief only if he shows both that counsel erred by "ignor[ing] issues ... clearly stronger than those presented," Smith v. Robbins , 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) (citation and internal quotation marks omitted), and that there was a "reasonable probability" that he would have prevailed on the claim on appeal. Mayo v. Henderson , 13 F.3d 528, 533-34 (2d Cir. 1994).
As discussed above, all of Dressner's ineffective assistance claims are meritless. Thus, appellate counsel did not render ineffective assistance by failing to raise the underlying issues on appeal, see State v. Smith , 547 So.2d 760, 763 (La. App. 4 Cir. 1989) ("Since neither of relator's substantive claims have merit, the claim of ineffectiveness of appellate counsel is also without merit."). The district court correctly rejected these claims where they were presented.
Next, Dressner contends that at least one juror improperly relied upon an incorrect belief in the penalty phase that the return of a life sentence would mean he would be released from custody after a mere 10 years, thereby influencing that juror (and perhaps others) to vote in favor of the death penalty. In support of this claim, Dressner attached to his application a handwritten affidavit from the juror who allegedly harbored this belief.
As an initial matter, the juror's post-trial affidavit is inadmissible pursuant to Louisiana's jury shield law, found in pertinent part in La.C.E. art. 606(B) :
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
*550 Dressner admits that the jury was instructed "no less than ten times" that a life sentence without parole was the only available alternative to the death penalty. "[T]he presumption is that the jury followed the judge's instructions." See State v. Ward , 246 La. 766, 774, 167 So.2d 359, 362 (1964). The juror's affidavit details not "extraneous prejudicial information [that] was improperly brought to the jury's attention," but her own purported "mental processes" in deciding the appropriate sentence in this case. Dressner does not argue that the juror was misinformed by any outside source during her deliberations, but he relies solely upon her apparent misunderstanding of the jury instructions, which an internal factor not appropriate for inquiry. See United States v. Flemming , 223 Fed.Appx. 117, 124 (3d Cir. 2007) (juror's misunderstanding of the burden of proof barred from consideration because it was not extraneous prejudicial information or an improper outside influence); State v. Ward , 663 S.W.2d 805, 808 (Tenn. Ct. Crim. App. 1983) ("The incorrect application of an otherwise valid jury instruction does not constitute the impropriety necessary to allow a juror to impeach his verdict by affidavit."). The district court correctly rejected this claim.
Finally, Dressner also shows no grounds for relief based on his argument that the cumulative effect of the claimed errors rendered the proceedings fundamentally unfair. Although we have previously reviewed cumulative error arguments, we have never endorsed them. See, e.g., State v. Strickland , 94-0025, pp. 51-52 (La. 11/1/96), 683 So.2d 218, 239 ; State v. Taylor , 93-2201 (La. 2/28/96), 669 So.2d 364 (unpub'd appx.); State v. Tart , 93-0772, p. 55 (La. 2/9/96), 672 So.2d 116, 164 ; State v. Copeland , 530 So.2d 526, 544-45 (La. 1988) (citing State v. Graham , 422 So.2d 123, 137 (La. 1982) ). Given Dressner's failure to show prejudice as a result of any of the claimed errors, he cannot show that their combined effect entitles him to relief. See, e.g., Mullen v. Blackburn , 808 F.2d 1143, 1147 (5th Cir. 1987) (rejecting cumulative error claim, finding that "twenty times zero equals zero").
Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.

Dressner relies upon the dosage of midazolam called for by the state's current fallback protocol (10 milligrams) as prima facie evidence that an execution conducted using that dosage will carry a substantial risk of causing severe pain. In support, he cites botched executions in Ohio and Oklahoma that took place with much higher dosages of midazolam (50 milligrams and 100 milligrams, respectively).

The hearing concerning the admissibility of this conviction occurred on May 24, 2004, over two years from the date of Dressner's Orleans Parish conviction (August 28, 2001).

Dressner also initially argued that the state misled the jury during opening arguments by referencing Arnaud's plea to accessory after the fact to first degree murder, believing that Arnaud had actually pleaded guilty to accessory after the fact to second degree murder. However, the district court noted that the former is the correct conviction, and Dressner has since dropped this contention.

The instruction read:
If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, flight alone is not sufficient to prove he was guilty. However, flight may be considered in light of all other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.