STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0023


STATE OF LOUISIANA

VERSUS

CARL THOMPSON, II


Judgment Rendered: APR 1 6 2021


Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 02-17-0727

Honorable Richard D. Anderson, Judge Presiding


************


Hillar C. Moore, III
Cristopher J.M. Casler
Baton Rouge, LA

Counsel for Appellee,
State of Louisiana


Cynthia Meyer
New Orleans, LA

Counsel for Defendant/Appellant,
Carl Thompson, II


************


BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

Defendant, Carl Thompson, II, was charged by bill of information with attempted second degree murder, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. He pled not guilty. After a trial by jury, defendant was found guilty as charged. The trial court imposed a sentence of forty-five years imprisonment at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. Defendant now appeals. For the following reasons, we affirm the conviction and sentence.

## FACTS

On the morning of February 22, 2017, defendant was at the home of the victim, Angela Gabriel. Gabriel is the mother of defendant's two sons, and had been in a relationship with defendant for several years. Their youngest son had recently returned from an emergency room visit for bronchitis, and defendant was assisting Gabriel in caring for him. Defendant and Gabriel began to argue over how to care for the child. Because Gabriel had a meeting later that morning, she entered the bathroom to take a bath.

Gabriel testified that after hearing defendant say, "I just wish you would shut up, just shut up sometimes[,]" defendant shot her several times while she was in the bathtub. Defendant left the bathroom, came back in with a cell phone, and told Gabriel, "look what you made me do, Angie." Gabriel asked him to dial 911, which defendant did. Otherwise, Gabriel did not recall defendant making any attempt to help her, except as she directed. Defendant let the water out of the bathtub when asked by Gabriel. Emergency personnel eventually arrived and took Gabriel to the emergency room, where she was treated for several gunshot wounds to the shoulder, chest, and back. Six bullet casings were recovered from the crime scene. The firearm used in the shooting was registered to defendant. DNA testing of a swab from the firearm revealed defendant could not be excluded as a major

2

contributor of DNA found on the gun. The shooting left Gabriel partially paralyzed.

Defendant testified at trial. Defendant explained that he is a diabetic, and at the time of the shooting, he had only recently begun taking insulin again. He also explained that he and Gabriel did not live together, but that he was at her residence with a gun that day because his eight-year-old son had asked him to be there. He testified that he and Gabriel had an argument that morning, which became increasingly heated. Defendant testified, "[a]nd in a flash -- I don't even remember picking that gun up -- I went from standing there looking down at the gun to in the doorway squeezing." Defendant testified he kept pulling the trigger until it was "going click, click, click." Soon thereafter, he "snapped out of it[,]" realized what he had done, and began to repeatedly apologize to Gabriel. Defendant explained that following the call to 911, he left the house because as a trained fireman, he knew police would not enter the house if he was still inside when they arrived. After walking out of the house, he was arrested by responding officers. Defendant explained Gabriel's screaming "was just something [he] couldn't handle[,]" and that he "wanted the screaming to stop."

On cross-examination, defendant claimed he rendered aid to Gabriel, but he responded, "I don't guess. I don't know," when it was stated that he did not have any blood on his hands or clothes. He also acknowledged that although he had medication, he had not taken any on the day of the shooting. Defendant explained that he did not remember seeing Gabriel in the tub, "because [he] physically just saw a white cloud" when he began shooting.

## DISCUSSION

### Assignment of Error Number One
### Defective Jury Venire

In his first assignment of error, defendant argues he was denied due process where the jury venire in East Baton Rouge Parish was defectively constituted. Citing the Louisiana Supreme Court's recent decision in State v. Cannon, 2019-590 (La. 4/18/19), 267 So. 3d 585 (per curiam), defendant argues his jury venire was made deficient by the same process and was not a fair cross-section of the community, where those born after June 2, 1993, were excluded from the jury pool. Consequently, defendant seeks to have his conviction vacated, and the case remanded for a new trial before a jury selected from a new, properly constituted venire. The State notes defendant failed to file a motion to quash before trial, thus waiving the issue.

The Louisiana Supreme Court held in Cannon, 267 So. 3d at 585-586:

> Defendant has shown that, under the system employed in East Baton Rouge Parish, persons born after June 2, 1993, otherwise qualified to serve on the jury, were never given an opportunity to serve, because their names were excluded from the general venire as a result of a significant error in the process by which the general venire was composed. That exclusion resulted in a general venire that was improperly constituted under Code of Criminal Procedure articles 401 et seq. and Louisiana Constitutional Articles I, § 3 ("No person shall be denied the equal protection of the laws.") and V, § 33 ("A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled."). Accordingly, we grant defendant's application to reverse the rulings of the courts below, grant defendant's motion to quash the general venire, and remand to the district court for further proceedings so that a petit jury can be chosen from a general venire that is selected according to law. See State v. Jacko, 444 So.2d 1185 (La. 1984); State v. Procell, 332 So.2d 814 (La. 1976).

There is little question defendant's jury was assembled from the same venire the Louisiana Supreme Court found defective in Cannon; however, in State v. Smith, 2017-1333 (La. App. 1st Cir. 2/21/18), 2018 WL 1007350, at *4,

4

(unpublished), writ denied, 2018-0405 (La. 2/18/19), 265 So. 3d 771, this court noted:

> The proper procedural vehicle for alleging that the general or petit jury venire was improperly drawn, selected, or constituted is a motion to quash. La. C.Cr.P. art. 532(9). A motion to quash based on the ground that the petit jury venire was unconstitutionally drawn should be filed in writing prior to the beginning of the jury selection. See La. C.Cr.P. arts. 521, 532(9), and 535(C); see also **State v. Pooler**, 96–1794 (La. App. 1st Cir. 5/9/97), 696 So.2d 22, 39, writ denied, 97–1470 (La. 11/14/97), 703 So.2d 1288. Herein, the record shows that the defendant did not move to quash the petit jury venire by oral or written motion. Thus, the defendant did not properly raise his challenge to the jury venire's composition. Any grounds for that potential motion were waived. See La. C.Cr.P. art. 535(D).

Herein, defendant did not file such a pretrial motion to quash or raise the issue before voir dire began, and did not raise the issue until the instant appeal. See generally LSA-C.Cr.P. art. 841; State v. Thibodeaux, 2016-0994 (La. 10/27/17), 227 So. 3d 811, 812 (per curiam) (citing Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94), 630 So. 2d 714, 725, cert. denied sub nom., Allstate Insurance Co. v. Louisiana Insurance Guaranty Association, 511 U.S. 1142, 114 S. Ct. 2165, 128 L. Ed. 2d 887 (1994)). Accordingly, defendant's claim of a defective jury venire is not properly before the court and is denied as waived. See State v. Thomas, 2019-0409 (La. App. 1st Cir. 10/25/19), 289 So. 3d 1030, 1044, writ granted in part and remanded on other grounds, 2019-01819 (La. 6/22/20), 297 So. 3d 727 (per curiam).[1]

### Assignment of Error Number Two
### Ineffective Assistance of Counsel

In his second assignment of error, defendant contends he received ineffective assistance of counsel, where counsel failed to request the jury be polled as to its verdict. Defendant cites the recent United States Supreme Court's decision in Ramos v. Louisiana, 590 U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583

---

[1]See also State v. Germany, 2020-00878 (La. 11/4/20), 303 So. 3d 631, 632 (per curiam), ("[c]ourts have found that various age spans of young persons are not distinctive groups for purposes of a fair cross-section analysis.").

(2020), where the Court found Louisiana's non-unanimous jury verdict requirement to be unconstitutional. However, because counsel did not poll the jury and its verdict was otherwise unrecorded, defendant is precluded from raising the issue on appeal, even on error patent review. The State argues that the underlying claim was waived by trial counsel's failure to make a contemporaneous objection or raise the issue below, and that defendant provides nothing to suggest the jury's verdict was anything but unanimous.[2] Consequently, the State asserts defendant fails to show the prejudice required to succeed in an ineffectiveness claim.

As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the district court rather than on appeal. This is because post-conviction relief provides the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. See State v. Miller, 2015-1031 (La. App. 1st Cir. 12/23/15), 185 So. 3d 811, 815, writ denied, 2016-0152 (La. 1/23/17), 215 So. 3d 681. However, when the record is sufficient, as here, this court may resolve this issue on direct appeal. State v. Patton, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So. 3d 1209, 1217.

A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to establish that his trial attorney was ineffective, defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, defendant must prove that the deficient performance

---

[2]Regardless whether defendant waived the underlying claim on direct review, it is impossible to determine from the record if the jury's verdict was unanimous. Counsel's failure to poll the jury is clear. In any event, the underlying issue would not properly be before this court absent error patent review. State v. Amato, 96-0606 (La. App. 1st Cir. 6/30/97), 698 So. 2d 972, 988, writs denied, 97-2626, 97-2644 (La. 2/20/98), 709 So. 2d 772 (where defendant failed to make a contemporaneous objection to the polling procedure, he cannot raise this issue for the first time on appeal).

prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to defendant if defendant makes an inadequate showing on one of the components. State v. Eason, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So. 3d 61, 73.

This court has addressed the issue of jury polling relating to a non-unanimous jury, but at the time it was merely speculative. In State v. Day, 2017-1455 (La. App. 1st Cir. 6/21/18), 253 So. 3d 173, 184-185, writ denied, 2018-1228 (La. 4/15/19), 267 So. 3d 1126, we found a claim of such ineffectiveness as not yet ripe for review and would only become so "if the legislature changed [LSA-C.Cr.P. art. 782(A)] to require unanimous verdicts *and* made the new law retroactive." State v. Day, 253 So. 3d at 185 (emphasis in original). Some time later, the Louisiana Second Circuit Court of Appeal addressed a similar claim. In State v. Copeland, 52,742 (La. App. 2nd Cir. 9/25/19), 280 So. 3d 848, 866-867, the Second Circuit Court found counsel was not ineffective for failing to poll the jury where the "law does not require jury polling in criminal cases," citing LSA-C.Cr.P. art. 812. That court recognized the then-recent amendment to the Louisiana Constitution requiring unanimity for cases resulting in hard labor sentences, but pointed out that the amendment applied only to offenses committed on or after January 1, 2019. As the defendant's offense in that case was committed well before that date, the court held the unanimous jury verdict law did not apply

7

in that specific case.[3] State v.Copeland, 280 So. 3d at 867. Thus, counsel was not ineffective for failing to take actions based on a legal framework not in effect either at the time of the offense or trial.

The same underlying rationale can be applied here. Defendant was found guilty on August 8, 2018, but certiorari was not granted in Ramos until March 18, 2019.[4] The instant situation was contemplated by Justice Kavanaugh in his concurrence in Ramos, when he wrote:

> In addition, as to ineffective-assistance-of-counsel claims, an attorney presumably would not have been deficient for failing to raise a constitutional jury-unanimity argument before today's decision—or at the very least, before the Court granted certiorari in this case. Before today, after all, this Court's precedents had repeatedly allowed non-unanimous juries in state criminal cases.

Ramos v. Louisiana, 140 S. Ct. at 1420. We agree. It is difficult to contemplate a finding of ineffectiveness where the jurisprudence of jury non-unanimity had not once been successfully challenged in Louisiana and had been repeatedly upheld by the courts of Louisiana and the United States Supreme Court through State v. Bertrand, 2008-2215, 2008-2311 (La. 3/17/09), 6 So. 3d 738, 742 (LSA-C.Cr.P. art. 782(A) is not unconstitutional and therefore not violative of defendant's constitutional rights) and Johnson v. Louisiana, 406 U.S. 356, 363, 92 S. Ct. 1620, 1625, 32 L. Ed. 2d 152 (1972), respectively. Cf. State v. Dressner, 2018-0828 (La. 10/29/18), 255 So. 3d 537, 544 (per curiam), cert. denied sub nom., Dresser v. Louisiana, ___ U.S. ___, 139 S. Ct. 2691, 204 L. Ed. 2d 1093 (2019) (citing State v. Kenner, 336 So. 2d 824, 831 (La. 1976) (counsel does not err in not undertaking futile steps)); State v. Williams, 613 So. 2d 252, 256-257 (La. App. 1st Cir. 1992) ("When the substantive issue that an attorney has not raised has no merit, then the claim [that] the attorney was ineffective for failing to raise the issue also has no

---

[3]In contrast, the later-decided Ramos decision retroactively applied the unanimity requirement to cases not yet final on appeal, as is the posture of the instant case. Ramos v. Louisiana, 140 S. Ct. at 1406.

[4]The legislative act establishing the present version of LSA-C.Cr.P. art. 782(A) was passed on May 23, 2018. See 2018 La. Acts No. 493, § 1 (eff. Jan. 1, 2019).

merit."); see also Laymon v. State, 280 Kan. 430, 439-440, 122 P.3d 326, 333 (2005) (although failure of direct appeal counsel to raise a particular issue on appeal is not, per se, ineffective assistance of counsel, a lawyer's failure to foresee a change in the law may lead to post-conviction relief if the failure was not objectively reasonable); but see generally State v. Crehan, 2018-0746 (La. App. 1st Cir. 11/5/18), 2018 WL 5785479, at *10-11 (unpublished) (Guidry, J., concurring in the result), writ denied, 2018-2024 (La. 4/15/19), 267 So. 3d 1124, cert. granted, judgment vacated, ___ U.S. ___, 140 S. Ct. 2713, 206 L. Ed. 2d 850 (2020). Moreover, there is nothing else in Louisiana jurisprudence that would suggest any failure to poll the jury, without more, constitutes ineffectiveness despite the ever-present possibility a jury returned a structurally deficient verdict that would not be revealed absent polling. See State v. Moore, 48,769 (La. App. 2nd Cir. 2/26/14), 134 So. 3d 1265, 1275 n.14, writ denied, 2014-0559 (La. 10/24/14), 151 So. 3d 598 (defense counsel's failure to request the jury be polled did not prejudice defendant, and thus could not amount to ineffective assistance; there was no indication in the record that the jury's verdict was not proper); see also State v. Bradley, 53,550 (La. App. 2nd Cir. 11/18/20), 307 So 3d 369, 374.

Because defendant does not demonstrate that counsel's performance was deficient, we need not address the second Strickland prong. See State v. Easton, 293 So. 3d at 73.

This claim is also without merit.

### Assignment of Error Number Three
### Excessive Sentence

In his final assignment of error, defendant argues a forty-five year sentence imposed on someone in his late forties is essentially a life sentence. Defendant asserts that although he does not dispute the harm caused by his actions, the sentence is constitutionally excessive. The State contends defendant's sentence is

within the statutory range and is supported by the record and pre-sentence investigation. Specifically, the State notes that the "violent nature of the attack and the seriousness of the injuries suffered by the victim" support the trial court's discretion in sentencing defendant as it did.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979); State v. James, 2016-1250 (La. App. 1st Cir. 2/17/17), 215 So. 3d 269, 271. A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Spikes, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So. 3d 201, 204. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Ford, 2017-0471 (La. App. 1st Cir. 9/27/17), 232 So. 3d 576, 587, writ denied, 2017-1901 (La. 4/22/19), 268 So. 3d 295. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of LSA-C.Cr.P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Letell, 2012-0180 (La. App. 1st Cir. 10/25/12), 103 So. 3d 1129, 1138, writ denied, 2012-2533 (La. 4/26/13), 112 So. 3d 838.

The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is

unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So. 2d 475, 478 (La. 1982); State v. Ducote, 2016-1457 (La. App. 1st Cir. 4/12/17), 222 So. 3d 724, 727. The trial judge should review defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So. 2d 1049, 1051-1052 (La. 1981); State v. Scott, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So. 3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So. 3d 410. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La. 10/9/98), 719 So. 2d 49, 50 (per curiam). In this case, on his conviction of attempted second degree murder, defendant was exposed to a sentencing range of ten to fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:27(D)(1) and 14:30.1(B).

Here, Gabriel addressed the court with a victim impact statement in which she described her life as having changed following the shooting, explaining that her eleven-year old daughter, her siblings, and her mother help her due to her paralysis. She also explained most of what she lost she could "get back with support from family and friends, and just through hard work." She also testified regarding the impact of defendant's actions on their children and the sacrifices made to help her find "a different way of doing things now." The trial court discussed defendant's history and the offense as detailed in the presentence investigation at length. The court noted the investigation recommended a term of no more than eleven years imprisonment. The court also observed defendant worked for the Baton Rouge Fire Department for fifteen years and did not have a history of criminal convictions. Although Gabriel expressed her forgiveness of

11

defendant and a desire that he not be given a lengthy prison sentence so that he could be part of their children's lives, the court found that "[t]his is a completely senseless crime that has permanent consequences not just for the defendant, but for the victim[.]" The court found as the only mitigating circumstance the fact that defendant did not expend all of the bullets in the gun when shooting the victim and eventually called 911. Ultimately, the court described defendant's offense as "a pretty horrible crime" where the victim is "paralyzed for the rest of her life" and that "[a]nything less than this would depreciate [sic] the seriousness of this offense." At the hearing on defendant's motion to reconsider sentence, the trial court informed defendant that it does not "let victims sentence[,]" and that it "considered all of those factors that are in the Code of Criminal Procedure." Weighing heavily in the court's determination was the permanence of the victim's paralysis, that defendant "took a lot away" from the victim and her family, and that the result of his actions were permanent.

Defendant's sentence is within the statutory parameters. Given the broad discretion afforded a trial court in sentencing, we do not find defendant's sentence unconstitutionally excessive. In considering the Article 894.1(B) factors, we note that defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim, that the offense resulted in significant permanent injury to the victim, and that defendant used a dangerous weapon in the commission of the offense. See LSA-C.Cr.P. art. 894.1(B)(1), (9), & (10). We find that the sentence imposed is not grossly disproportionate to the severity of the offense and does not show a "manifest abuse of discretion" on the part of the sentencing court.

Accordingly, this claim is also without merit.

**CONVICTION AND SENTENCE AFFIRMED.**

12